Good morning again. Our second case for today is Bailey against the Office of Workers' Compensation Programs of the Department of Labor. And Mr. Cyr, we are ready to hear from you. Thank you, Your Honor. May it please the court, my name is Robert Cyr, and I'm privileged to represent the claimant petitioner, Ms. Nancy Bailey, who herself is carrying on this fight on behalf of her deceased husband, the coal miner in this case, Mr. Charles Bailey. As this court has previously held in Freeman United Coal these summers, the Black Lung Benefits Act is remedial in nature and liberally construed to effectuate its purpose of improving the well-being of miners. All circuits rendering decisions on black lung cases have held some version of this same proposition, finding that Congress's primary purpose in establishing the Black Lung Benefits Act was to provide adequate benefits as established by the federally mandated monthly minimum level to coal miners who are totally disabled by pneumoconiosis and to their surviving dependents of coal miners whose deaths were due to pneumoconiosis. Mr. Cyr, what work does that proposition do for us in this case? Your Honor, the proposition, the primary purpose of the act is central in this case because at any point when an adjudicator is interpreting any amount of doubt, if there's any doubt, if there's any controversy as to what is being interpreted, in this case, it's the settlement agreement, the State Workers' Compensation Settlement Agreement, any doubt must be resolved in favor of the miner. And so courts have generally interpreted the director's interpretations of these regulations and the statute to ultimately favor the miner. Now, this court should reverse the decisions of the Benefits Review Board and the Administrative Law Judge in remanding the case back to the Administrative Law Judge for three primary reasons. First, the Administrative Law Judge erred in finding that the director acted reasonably in determining that Mr. Bailey's Illinois State Workers' Compensation lump sum payment award of $27,677.50 constituted a commutation of, or substitution for, periodic payment. But Mr. Sear, Mr. Sear, I mean, the problem with that, I think there are a couple of problems, but one of them is, you know, the director wasn't touching anything that had been paid in this notional monthly sense prior to his qualification for the black lung benefits, but more importantly, the actual settlement agreement tells you, you know, what the monthly pro rata payments were. This doesn't have to be done with mathematical precision. The director is told to reasonably approximate what that would be, and the 135 and some a month is what the agreement, it's not like the director just pulled some number out of the air. The director found this number, as I recall, there are about 55 months affected, multiplied it times that, and said that's the offset that the statute requires. She still winds up getting more money from, well, she gets her payments from the compensation fund, and she gets her payments from the federal fund. So I don't know what's contrary to statute or unreasonable about the director's approach. Your Honor, I guess first, as far as the regulation, is that for the lump sum payment, which is the state award in this case, it was Mr. Bailey's state award, not Mrs. Bailey's. No, I understand the $5,000 is not a problem anymore, yeah. Correct, sorry, Your Honor, I just wanted to make sure. The state lump sum award, it must be a commutation or substitution for periodic benefits, and if you look at the express language, and this is on the separate appendix, page 60, there is express language in that agreement that specifically says that this said lump sum amount is not a substitute for periodic payments. Now, I grant you that further down in the contract, it certainly does have a breakdown of that $35,000. However, if- Could I ask you, though, is it possible for parties just by inserting a sentence like that in there to prevent the director from stepping back and looking at the settlement as a whole to see how it should operate under the statutory and regulatory system? I'm really sorry, Your Honor. Could you please repeat your question? What I'm worried about is if you just have to put a magic sentence into a lump sum payment and say this isn't a substitute, then the regulation wouldn't mean anything. No one would ever forget to put that sentence in. So I'm just wondering why the director doesn't have the authority to look at the settlement as a whole and assess what it is. They do have that authority, Your Honor. The issue is that this phrase that comes before the breakdown under the regulations specifically means that it cannot be offset. It's saying that- And it's true that that amount may not be a substitute because the over $7,000 went to attorney's fees and reimbursement of court costs, but the $27,000 figure is dealt with in a separate paragraph that is broken down that makes it clear it is a substitute. Yes, Your Honor. It is possible. Isn't that a reasonable reading of the contract? Respectfully, no, Your Honor. The reason that it's not reasonable is because if it was to be a reasonable reading of it, then why did the parties not simply add in that the 27, add in language that said that the $27,677 was a substitute for periodic payments or was a commutation? The reason that says there has to be magic language in there, just reading paragraph three from the settlement agreement shows the breakdown, shows it's being paid based on his weekly payments. Why isn't that sufficient? That is correct, Your Honor. It's just perplexing then why the drafters would have included that statement before the breakdown that did say this lump sum award is not a substitute for periodic benefits. But moreover- But isn't it a perfectly reasonable explanation that takes it out of perplexing that, again, that refers to the $35,000 amount, which the entire $35,000 amount was not a substitute because over 7,000 of that went to attorney's fees. That is correct, Your Honor. However, again, it is perplexing. If that was the intent, if this was the intent of the drafters, then why would they add a statement that seemed to take the amount that Mr. Bailey was initially awarded, regardless of the breakdown, to say that it's not a substitute for periodic payments? Because the reality is this contract, this settlement agreement, has numerous provisions that set forth what the lump sum award represents. On the previous page of the contract, for example, which is at the separate appendix, page 59, contract discusses that the amount represents 15% man as a whole, which works out to about 76 weeks worth of disability at the rate of $467 and some change per week. So I guess, why is the director allowed to take the language from the page 60 there instead of using the language from page 59, which both of them seem to indicate what that amount is representing? Mr. Sear, this contract isn't dedicated to these two parties. This is a form contract, which is then filled in the blanks, correct? Yes, Your Honor, it appears to be a form contract used by employers that operates here. And on that note, I would like to add that the Black Lung Benefits Act and all courts ruling on this issue have specifically found that a claimant cannot contract away his right to benefit. And moreover, there is evidence, and indeed it has been the Department of Labor's position at least in the past, that there is no maximum amount of benefits that a minor can receive. And that is something very important that the court should acknowledge in this case here. There is no, it's not like you're only allowed as a claimant to receive the, whatever the federal monthly minimum rate is. Indeed, the Congress, when passing the act, intended claimants to be able to take care of their livelihood at the end of the day. I see my time is up. Okay, your time has expired. So thank you, Mr. Sear. Mr. Goldberg. Thank you, I'm representing the Director, Office of Workers' Compensation Programs. And I think the question here is really whether the settlement agreement means what it says. But Mr. Goldberg, let me ask just one point that bothers me about this. The settlement agreement wasn't really a particular monthly, or equivalent of monthly payment, because it was based on an actuarial assumption about what Mr. Bailey's lifespan was going to be. It might have been more, it might have been less. There's actually an incredibly offensive sentence in the ALJ's opinion where the ALJ says Mr. Bailey won the actuarial gamble because he died. And I hope that that's not the way your ALJ's usually write. I, that's the first time I've seen anything like that, and we're not pleased with it either. But in any event, what I'm saying is that, you know, if he had died five years later, the monthly payment would have been one thing. And if he had died 25 years later, we wouldn't be here. It was just an approximation of what it would look like from a snapshot, from a point in time. Yes? I'm not sure what- Well, I mean, I'm worried about the reasonableness of the director's decision to take this 135-67 and just multiply it times the 55, sorry, the 75 weeks or so. Yeah. Well, it's, we, as you see the regulation, the act and the implementing regulations, fire us to offset where there are, and we're in a lump sum cases where it's substitution and where the payments are concurrent. The offset is only for the concurrent time, right? Oh, of course, yes. Right, right. Only for the time that the minor was awarded his federal benefits to his death. Mm-hmm. But the plain language of the settlement agreement said, it was very clear, $135.67 a month for that period. The ALJ very reasonably language at face value and applied it. I'm not even sure. I'm not sure how many other reasonable ways there were to look at it. Well, your opponent suggests a couple of other ways, any of which would have consumed the lump sum payment before the black lung payments began. Well, but even looking at the 75 weeks at $465.67, excuse me, if you multiply that out, you come to the $35,000. That includes the attorney fees and costs. We couldn't have used, so we couldn't have used that as a basis. Based on, it isn't clear if they're looking at the last date of exposure, they could have been looking at a payment rate based on the minor's salary, based on the state's maximum compensation rate from the date that the award began. The ALJ had to make a choice and reasonably chose the plain language near the beginning of the contract that explains what the lump sum represents. Oh, and I do want to correct one quick point. I missed the doubts have to be resolved in the claimant's favor, but the Supreme Court has ruled that the true doubt rule as it was called was invalid. Doubt does not have to be resolved in the claimant's favor. Doubt has to be resolved on the credibility of the evidence. Sorry, one moment. Anyway, as I said, so I apologize, Your Honor, my wife was expecting a call. So do you have any concern that the way this is being operated will actually dissuade people from filing state claims in addition to federal claims? No, if anything is dissuading people, minors from filing state claims, it's that state awards tend to be less than, or in fact in every instance are less than the federal award. Under the Blacklung, they get more money under the Blacklung Benefits Act than they do under a state worker compensation scheme. Mm-hmm. I mean, this was, when the act was enacted by Congress, they thought that the government or coal miners or operators would, or really, I'm sorry, the trust fund would only pay, would be paying benefits. Not often, the states would enact equivalent compensation schemes, and that just didn't happen. Anyway, so, but I was going to say the, I think you've, so I think you clearly understand here why we believe that it was a substitution. The next question, I think, is whether it was concurrent. And again, that seems pretty clear. The regulation, section 20 CFR 725, 535B, is that benefits are for a given month. It doesn't say received in a given month. And as they said, the plain language of the settlement agreement does say that, which months were for. Neither says anything about received in. Excuse me. And finally, I say again, for the alternative calculations, the $7,465 was not really, ALJ could have chosen because that includes the attorney fees and costs, which are not offsettable, and it is vague. It could have meant anything. Finally, the settlement was not based on the theory that the 15% of the minor's impairment was due to pneumoconiosis. Pneumoconiosis caused the 15% impairment of the minor as a whole. And which is different from some of the cases Mr. Sear cites, where they refer to cases involving multiple state awards or combination of an injury from pneumoconiosis from non-coal dust, non-pulmonary injuries. I don't think I have anything else unless you have more questions. I see none from the court, so thank you very much. And I will let Mr. Sear take a minute to rebut even though you used up your time. Thank you, Your Honor, I do appreciate that. Just to piggyback off a question that Your Honor asked earlier regarding, will this dissuade minors, potentially from applying for federal claims? There's actually a greater danger here, which is that employers, and I realize the employer is not a party in this case right now, but that employers will continue to insert language in these contracts that limit their liability for payment of federal benefits down the road. And that's something that Attorney Tom Johnson, who was my mentor and he was originally lead counsel in this case, never stopped stressing to me. And so I just want to make it clear that that was ultimately the biggest worry in this case. And I feel that fortunate about it. And for all the previous reasons I've mentioned, I would respectfully request that you reverse the decisions of the BRB and ALJ and remand the case with instructions to not apply an offset. Thank you very much. All right, thank you. Thank you very much to both counsel. The court will take the case under advisement.